**FOR PUBLICATION**

```
            IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
               DIVISION OF ST. THOMAS AND ST. JOHN

                                    )
UNITED STATES OF AMERICA,           )
                                    )
           Plaintiff,               )
                                    )   Criminal No. 2008-7
           v.                       )
                                    )
MITCHELL FRANCIS and ATIBA          )
BRATHWAITE,                         )
                                    )
           Defendants.              )
_____)
```

**ATTORNEYS:**

**Delia Smith, AUSA**
St. Thomas, V.I.
   *For the government.*

**Darren John-Baptiste, Esq.**
St. Thomas, V.I.
   *For Defendant Atiba Brathwaite.*

## MEMORANDUM OPINION

Before the Court is the motion of Defendant Atiba Brathwaite ("Brathwaite") to suppress any and all statements made in violation of his Fifth Amendment rights. At the conclusion of the suppression hearing, the Court ruled in favor of the Government. This memorandum opinion memorializes the Court's ruling.

## I. FACTS

On December 15, 2007, the Drug Enforcement Administration (DEA) received information from a confidential source that a drug

*United States v. Francis et al*
Crim. No. 2008-7
Memorandum Opinion
Page 2

transaction was going to take place at the American Yacht Harbor ("Yacht Harbor") in Red Hook, St. Thomas, Virgin Islands. The source also indicated that the narcotics would be arriving via a personal water craft, and that the narcotics were concealed in two cardboard boxes. In response to this information, DEA agents, along with agents from Custom and Border Protection ("CBP") and Immigration and Customs Enforcement ("ICE"), initiated a drug trafficking surveillance operation at Yacht Harbor.

During this operation, agents observed a small water-craft vessel entering the Yacht Harbor. Mitchell Francis ("Francis") was observed removing two cardboard boxes from the vessel and placing them on the dock next to a vending machine. The agents maintained surveillance on the boxes. Several minutes after Francis left, the agents observed Brathwaite picking up the two boxes and placing them into a cart.

Thereafter, DEA Agent, Eric Lee, and Chief of Police, Rodney Querrard, approached Brathwaite. Lee and Querrard identified themselves as law enforcement officers and asked Brathwaite if he would speak with them. Brathwaite agreed to speak to the officers. Lee informed Brathwaite that DEA, ICE and CBP were conducting an operation and that he was observed picking up the boxes. Brathwaite explained that he worked on the dock and that

*United States v. Francis et al*
Crim. No. 2008-7
Memorandum Opinion
Page 3

it was normal for him to move boxes along the dock. Brathwaite also indicated that another person had asked him to move the boxes. Lee asked Brathwaite the name of the person who told him to move the boxes. Brathwaite responded that he did not know the person's name. Brathwaite also stated that he was unaware of what was inside the boxes.

Lee requested a canine unit to conduct a "sniff test" of the boxes. The canine gave a positive response for the presence of narcotics. Brathwaite was then arrested and transported to the High Intensity Drug Trafficking Area ("HIDTA") office by DEA Resident Agent-in-Charge ("RAIC"), James Doby ("Doby"), and ICE RAIC Hilary Hodge ("Hodge").

During the transport, Brathwaite was orally advised of his *Miranda* rights. Brathwaite waived his rights and agreed to speak to the agents. At this time, Brathwaite stated that the cocaine in the boxes belonged to Francis. Brathwaite told the agents that Francis told him to place the boxes by the fuel pumps. Brathwaite also told the agents that in the past he was asked to check on the presence of CBP marine interdiction vessels at Yacht Harbor.

At the HIDTA office, was presented with a waiver of rights form, but chose to invoke his right to remain silent. Lee told Brathwaite that if he did not want to answer any questions, he

*United States v. Francis et al*
Crim. No. 2008-7
Memorandum Opinion
Page 4

would be processed and held in jail until his initial appearance before the Court on December 17, 2007. An agent then approached Brathwaite and told him it was time to go for processing. Brathwaite refused to leave his seat. Brathwaite indicated that he wished to waive his right to remain silent and was willing to answer questions.

For a second time, Brathwaite was presented with an advice of rights and waiver form. Brathwaite signed the waiver. After signing the waiver, Brathwaite once again told the agents that Francis told him to move the boxes from the vending machine to the fuel pumps. Brathwaite also stated that he did not know what was in the boxes. Brathwaite further explained that he had heard rumors that Francis was involved in drug activity. Brathwaite was also asked why he was untruthful before. Brathwaite stated that when he saw the agents approaching him, he knew something was wrong with the boxes. Brathwaite also stated that he had been asked in the past to check on the presence of customs boats at Yacht Harbor.

Brathwaite was subsequently charged with conspiracy to possess with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 846, and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841.

*United States v. Francis et al*
Crim. No. 2008-7
Memorandum Opinion
Page 5

Brathwaite now seeks to suppress any and all statements made to officers and agents.

## II. DISCUSSION

The exclusionary rule prohibits the introduction at trial of evidence obtained in violation of the Fifth Amendment for the purposes of proving a defendant's guilt. *See, e.g., United States v. Dickerson,* 530 U.S. 428, 433 (2000) (explaining that a violation of a defendant's Fifth Amendment rights is a constitutional basis for the exclusion of statements obtained as a result). The Fifth Amendment guarantees the right to be free from compelled self-incrimination. *See* U.S. Const. amend. V.; *see also* Revised Organic Act of 1984, 48 U.S.C. § 1561 (extending Fifth Amendment rights to the United States Virgin Islands). When a suspect is in custody, the Supreme Court has devised procedural safeguards "to dissipate the compulsion inherent in custodial interrogation and, in so doing, guard against abridgement of [a] suspect's Fifth Amendment rights." *Moran v. Burbine*, 475 U.S. 412, 415 (1986).

*Miranda* warnings are required when there is both a custodial setting and an interrogation. *See United States v. Mesa*, 638 F.2d 582, 584 (3d Cir. 1980) (stating "Miranda warnings are designed to protect against the evils of 'custodial

*United States v. Francis et al*
Crim. No. 2008-7
Memorandum Opinion
Page 6

interrogation'..."). It is well established that a person is in custody where "he or she has been 'deprived of his [or her] freedom of action in any significant way.'" *United States v. Jacobs*, 431 F.3d 99, 104 (3d Cir. 2005). A person is interrogated where any question or statement or action by the police is likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (stating that the term 'interrogation' under Miranda refers not only to express questioning, but also to any words or action ... that the police should know are reasonably likely to elicit an incriminating response").

The Fifth Amendment also provides that, "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. A defendant who has been advised of his *Miranda* rights may waive them, as long as such waiver is knowing, intelligent, and voluntary, given the totality of the circumstances. *See Moran v. Burbine*, 475 U.S. 412, 422-23 (1986) (finding that the defendant's waiver of his *Miranda* rights was knowing and voluntary because such waiver was uncoerced, the defendant knew he could remain silent and request a lawyer, and he was aware of the government's intention to use his statements against him). "The prosecution bears the burden of proving, at least by a preponderance of the evidence, the *Miranda* waiver . .

*United States v. Francis et al*
Crim. No. 2008-7
Memorandum Opinion
Page 7

. ." *Missouri v. Seibert*, 542 U.S. 600, 609 (2004)(citation omitted).

### III. ANALYSIS

Brathwaite argues that the statements he made to agents must be suppressed because they were obtained in violation of his Fifth Amendment rights. *Miranda* warnings are required when there is both a custodial setting and an interrogation. *See United States v. Mesa*, 638 F.2d 582, 584 (3d Cir. 1980) (stating "Miranda warnings are designed to protect against the evils of 'custodial interrogation'..."). It is well established that a person is in custody where "he or she has been 'deprived of his [or her] freedom of action in any significant way.'" *United States v. Jacobs*, 431 F.3d 99, 104 (3d Cir. 2005). In determining whether a person is in custody, courts consider a variety of factors, including:

> (1) whether the officers told the suspect he was under arrest or free to leave; (2) the location or physical surroundings of the interrogation; (3) the length of the interrogation; (4) whether the officers used coercive tactics such as hostile tones of voice, the display of weapons, or physical restraint of the suspect's movement; and (5) whether the suspect voluntarily submitted to questioning.

*United States v. Willaman*, 437 F.3d 354, 359-360 (3d Cir. 2006).

Here, agents received information from a confidential source regarding drug activity at Yacht Harbor. Lee and Querrard also

*United States v. Francis et al*
Crim. No. 2008-7
Memorandum Opinion
Page 8

observed Brathwaite moving boxes that were under surveillance. The agents then approached Brathwaite and asked if they could ask him some questions. Brathwaite agreed and proceeded to answer their questions. That series of events did not constitute a custodial interrogation. *See, e.g., Miranda v. Arizona*, 384 U.S. 436, 477-478 (1972) (holding that "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process" does not require *Miranda* warnings); *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (holding that "police officers are not required to administer *Miranda* warnings to everyone whom they question"). Accordingly, Brathwaite's motion to suppress the statements made at the Yacht Harbor dock will be denied.

Brathwaite also seeks to suppress the statements made to agents during the transport from the Yacht Harbor dock to the HIDTA office. Brathwaite argues that these statements were also obtained in violation of his Fifth Amendment rights. As noted above, *Miranda* warnings require both custody and interrogation. *See Miranda v. Arizona*, 384 U.S. 436, 475 (1972) ("[t]o summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized." ). Here, Brathwaite

*United States v. Francis et al*
Crim. No. 2008-7
Memorandum Opinion
Page 9

was arrested and placed in a police vehicle. Brathwaite was also questioned by the agents in the vehicle after he was advised of his *Miranda* rights and verbally waived those rights.

Notwithstanding the issuance of *Miranda* warnings, a statement may still be in violation of the defendant's due process rights. *See Dickerson*, 530 U.S. 428, 444 (2000) ("[t]he requirement that Miranda warnings be given does not, of course, dispense with the voluntariness inquiry."). In determining whether a defendant's statements are voluntary, the court considers several factors:

> the youth of the accused; his lack of education or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as deprivation of food and sleep.

*Miller v. Fenton*, 796 F.2d 598, 604 (3d Cir. 1986). Here, there is no evidence to suggest that Brathwaite was too young or uneducated to voluntarily waive his right to remain silent. There is also no evidence that Brathwaite was subjected to repeated or prolonged questioning by the agents.

Under the totality of these circumstances, the Court finds that Brathwaite knowingly, voluntarily, and intelligently waived his right to remain silent. *See, e.g., Moran*, 475 U.S. at 422-23.

*United States v. Francis et al*
Crim. No. 2008-7
Memorandum Opinion
Page 10

Accordingly, Brathwaite's motion to suppress statements made in the vehicle will be denied.[1]

### IV. CONCLUSION

For the foregoing reasons, the Court finds that there was no Fifth Amendment violation requiring suppression of statements made by Brathwaite. Thus, Brathwaite's motion to suppress will be denied in its entirety. An appropriate order will follow.

**Dated**: March 31, 2008    s/_____
                             **Curtis V. Gómez**
                             **Chief Judge**

---

[1] At the suppression hearing, Brathwaite indicated that he was not attempting to suppress statements made to agents after signing the second waiver form at the HIDTA office. Therefore, the Court will not address those statements.